United States District Court
Southern District of Texas

**ENTERED**

September 28, 2023

Nathan Ochsner, Clerk

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| TEXAS TRUCK PARTS & TIRE INC, | § § § § § | CIVIL ACTION NO 4:21-cv-02055 |
| Plaintiff, | | |
| vs. | § § § | JUDGE CHARLES ESKRIDGE |
| UNITED STATES OF AMERICA, | § § § | |
| Defendant. | § | |

OPINION AND ORDER
GRANTING SUMMARY JUDGMENT

The motion by Plaintiff Texas Truck Parts & Tire Inc for summary judgment is granted. Dkt 41. The cross-motion by Defendant United States of America is denied. Dkt 42.

1.   Background

The parties submitted a comprehensive stipulation of undisputed facts. See Dkt 39. The dispute is simply whether applicable tax statutes and regulations reach these facts.

Plaintiff Texas Truck Parts & Tire Inc is a wholesaler and retailer of truck parts and tires for semi-tractors and semi-trailers based in Houston, Texas. Id at ¶¶ 2–3. Texas Oil & Filter Wholesale LLC is a Texas limited liability company also based in Houston. In 2014, it purchased the assets of Texas Truck and continued doing business under its name. Id at ¶ 4. From 2012 to 2017, both Texas Truck and Texas Oil purchased tires wholesale from Chinese manufacturers.

US Custom and Border Protection Form 7501 is an entry summary form required by Department of Homeland Security, referred to here as *CBP Form 7501*. For the tax quarters ending March 31, 2012, through December 31, 2017, an array of CBP Forms 7501 reflect that Texas Truck (or one of its related names)

was the ultimate consignee of tires purchased, with the "importers of record" noted as Omni United PTE(S), Ltd; Shandong Homerun Tires Co Ltd; Maxon Intl Co Ltd; Weifang Haichuan Imp & Exp; and Qingdao Lai Jie Rubber Trade (Hongtyre). Id at ¶ 5. Collective reference to these Chinese tire manufacturers will be to *the Chinese Manufacturers*.

With more specificity, the parties expressly stipulate, "All tires purchased from the Chinese Manufacturers . . . were delivered to Texas Truck and Texas Oil's place of business in Houston, Texas." Id at ¶ 7. And they submit the following evidence:

> o *Exhibit 1,* an annual "IMPORT SPREADSHEET" for each of the years 2012 through 2017, as maintained by the Department of Treasury, along with backing forms for each year, with each stating it is "Based on Customs Form 7501," and noting the designated "Importer" as one of the above Chinese Manufacturers. Dkt 39-1 at 1–118.
>
> o *Exhibit 2,* a representative sample of the actual CBP Forms 7501, with each listing the "Importer of Record" as one of the above Chinese Manufacturers. See Dkt 39-2 at 1–7.
>
> o *Exhibit 3,* a representative sample of invoices at issue in this case, with each reflecting Texas Truck or one of its related names as "the buyer" (or some similar designation) of tires from the Chinese Manufacturers, and showing a loading place in China and a delivery destination in Houston, Texas. See Dkt 39-3 at 1–127.

Texas Truck also submits a declaration from one of its officers to provide more detail on these transactions. It establishes that each Chinese Manufacturer:

> (i) Had a "local sales agent" in the Houston area, who solicited the subject sales from Texas Truck at its offices;
>
> (ii) Had "local affiliate companies" within the United States to assist with tire sales to US customers;

2

(iii) Represented through their sales representatives "that the prices quoted for the tires included payment of the federal excise tax";

(iv) Received payment on each invoice via check or wire transfer from Texas Truck;

(v) Arranged "all transportation of the tires from their plant facilities overseas to ports in the US," along with "packing of the tires into containers and the overseas shipping in containers"; and

(vi) Hired "import agents and brokers" in the US "to arrange unloading of the containers from the ships at the US ports, work with US Customs to obtain release of the containers from the Customs' warehouse, and transportation of the tires in the US directly to Texas Truck's and Texas Oil's door."

Dkt 41-1 at ¶¶ 4–6. The United States doesn't dispute the factual accuracy of these statements.

Neither Texas Truck nor Texas Oil initially paid "the applicable federal excise tax" to the IRS related to these imported tires. Id at ¶ 7. The Government opened and pursued an investigation of this matter commencing in February 2018. Dkt 39 at ¶¶ 11–23. In April 2020, it then assessed excise taxes against Texas Truck pursuant to 26 USC § 4071 for each of the applicable quarters, in the total amount of $1,932,643. Dkt 39 at ¶ 9.

Texas Truck has since paid $252,100 toward those taxes, while filing various forms to avoid levy, to request abatement, and to claim a refund. See Dkt 39 at ¶¶ 24–26. It then filed this action, seeking to recover this amount and to establish that the excise taxes were erroneously assessed. See Dkt 1.

Pending are cross-motions by the parties seeking summary judgment. Dkts 41 & 42.

2.   Legal standard

Rule 56(a) of the Federal Rules of Civil Procedure requires a court to enter summary judgment when the movant establishes that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." This doesn't involve weighing the evidence or determining the truth of a particular factual matter. The task is solely to determine

3

whether a genuine issue exists that would allow a reasonable jury to return a verdict for the nonmoving party. *Smith v Harris County*, 956 F3d 311, 316 (5th Cir 2010), quoting *Anderson v Liberty Lobby, Inc,* 477 US 242, 248 (1986).

When parties file opposing motions for summary judgment on the same issue, the court reviews each motion independently, each time viewing the evidence and inferences in the light most favorable to the nonmoving party. *Amerisure Insurance Co v Navigators Insurance Co*, 611 F3d 299, 304 (5th Cir 2010). Each movant must establish that no genuine dispute of material fact exists, such that judgment as a matter of law is in order. Ibid; see also *Tidewater Inc v United States*, 565 F3d 299, 302 (5th Cir 2009).

### 3.   Analysis

The parties join no dispute of material fact. Their competing contentions are ones of law as to applicability of the subject excise taxes under certain statutory and regulatory provisions.

The IRS imposed the excise tax at issue here pursuant to 26 USC § 4071. Two subsections are pertinent:

> **(a) Imposition and rate of tax.** There is hereby imposed on taxable tires sold by the manufacturer, producer, or importer thereof a tax at the rate of 9.45 cents (4.725 cents in the case of a biasply tire or super single tire) for each 10 pounds so much of the maximum rated load capacity thereof as exceeds 3,500 pounds.
>
> **(b) Special rule for manufacturers who sell at retail.** Under regulations prescribed by the Secretary, if the manufacturer, producer, or importer of any tire delivers such tire to a retail store or retail outlet of such manufacturer, producer, or importer, he shall be liable for tax under subsection (a) in respect of such tire in the same manner as if it had been sold at the time it was delivered to such retail store or outlet. This subsection shall not apply to an article in respect to which tax has been imposed by subsection (a). Subsection (a) shall not apply to an article in

4

respect of which tax has been imposed by this subsection.

Unfortunately, Congress didn't define *importer* as used in Section 4071. See 26 USC § 4072 (certain definitions). Neither did the regulations implementing those taxing provisions. See 26 CFR § 48.4071-1, -3; see also 26 CFR § 48.4072-1(g) (defining *manufacturer* without elaboration to include *importer* and *producer*).

The Treasury Department later filled that gap in a section providing general definitions related to the attachment of taxes, as proposed in 1976 and adopted in 1978:

> The term "manufacturer" includes any person who produces a taxable article from scrap, salvage, or junk material, or from new or raw material, by processing, manipulating, or changing the form of an article or by combining or assembling two or more articles. The term also includes a "producer" and an "importer." *An "importer" of a taxable article is any person who brings such an article into the United States from a source outside the United States, or who withdraws such an article from a customs bonded warehouse for sale or use in the United States.* If the nominal importer of a taxable article is not its beneficial owner (for example, the nominal importer is a customs broker engaged by the beneficial owner), the beneficial owner is the "importer" of the article for purposes of chapter 32 and is liable for tax on his sale or use of the article in the United States. See section 4219 and the regulations thereunder for the circumstances under which sales by persons other than the manufacturer or importer are subject to the manufacturers excise tax.

26 CFR § 48.0-2(a)(4)(i) (emphasis added).

### a.   The textual dispute

The Government contends that Texas Truck falls within the compass of *importer* as used in 26 USC § 4071—not that it was

either a *manufacturer* or *producer*. And as to the regulatory definition of *importer* provided by 26 CFR § 48.0-2(a)(4)(i), it doesn't contend that Texas Truck falls within the aspect addressing one "who withdraws such an article from a customs bonded warehouse for sale or use in the United States." Instead, it solely contends that Texas Truck can be understood as the one who "brings such an article into the United States" under the regulatory definition by merely ordering the tires from the Chinese Manufacturers for ultimate delivery in the United States. Dkt 44 at 12.

For its part, Texas Truck also takes the regulation on its face and makes a succinct textual argument—that it wasn't the *importer* of the foreign-manufactured tires because (i) it "did not bring the tires at issue into the U.S.," and (ii) it "did not withdraw the tires at issue from a customs bonded warehouse." Dkt 41 at 16.

Statutes and regulations are both subject to the same rules of interpretation. *Lara v Cinemark USA Inc*, 207 F3d 783, 787 (5th Cir 2000). "When construing statutes and regulations, we begin with the assumption that the words were meant to express their ordinary meaning." *Bouchikhi v Holder*, 676 F3d 173, 177 (5th Cir 2012). The Supreme Court "has repeatedly emphasized that common parlance matters in assessing . . . ordinary meaning." *Bostock v Clayton County*, 140 S Ct 1731, 1828 (2020) (Kavanaugh, J, dissenting) (citations omitted). Proper interpretation ultimately depends upon the plain language, with the statute or regulation being read as a whole and in context, with every clause and word given effect, if possible. *Lara,* 207 F3d at 787; see also, *United States v Fafalios,* 817 F3d 155, 159 (5th Cir 2016).

Neither party suggests any concern as to regulatory authority or deference under *Chevron USA, Inc v Natural Resources Defense Council, Inc*, 467 US 837 (1984), or *Auer v. Robbins*, 519 U.S. 452 (1997), or other related progeny. Indeed, neither cites *Chevron*, *Auer*, or any such cases. Cf *Forrest Gen Hosp v Azar*, 926 F3d 221, 230 (5th Cir 2019); *Mexican Gulf Fishing Company v United States Department of Commerce*, 60 F4th 956, 963 (5th Cir 2023).

This simplifies the nature of the inquiry, while making the ultimate question quite textual: To whom does the term

*importer* refer, as used in Section 4071? And more particularly, with respect to the path by which the Government seeks to impose the excise tax here, what does the term *brings* mean, as used in the regulatory definition of Section 48.0-2(a)(4)(i), and does it fit the conduct of Texas Truck?

Confounding this somewhat is a seeming dispute between the parties as to whether the Government seeks to impose the at-issue excise tax on the basis of Section 4071(a) or Section 4071(b). It seems clear that the Government proceeds under the latter, asserting that the sales here went through Texas Truck as a *retail outlet*, as referenced in Section 4071(b). See Dkt 44 at 9–10. Texas Truck appears to contend that such factual premise would be false, as it isn't a retail outlet, and so the tax must be imposed (if at all) pursuant to Section 4071(a). See Dkts 41 at 14–15 & 45 at 18. That dispute needn't be sharpened further because the determinative issue is whether Texas Truck was an *importer* on these facts. And that question must be resolved whether Texas Truck was an *importer* delivering tires to sell at its own retail outlet under Section 4071(b), or whether it was simply acting as an *importer* under Section 4071(a).

### b.   An evidentiary indication of meaning

Neither party argues dictionary definitions or common parlance with respect to the words importer and brings. Those are discussed elsewhere below, and while helpful, they don't sharply delineate meaning in a way that easily resolves this dispute. But a broader context serves as a useful starting point on joining interpretation with the record evidence.

A foreign ship can't simply pull into an American port and offload its goods. To the contrary, US Customs and Border Protection maintains significant, detailed requirements that an importer must meet to import goods into the country. For instance, an "importer of record" or its agent is the only person authorized to bring goods into a US port. See 19 USC § 1484(a)(1). The party serving those functions registers with the CBP so that it can, in fact, import into the United States. And CBP then tracks the importer based on the "importer of record" number on the importation paperwork. The forms filled out by the "importer of record" are then used by CBP to assess duties on the imported merchandise. See generally 19 USC §1484; 19 CFR §§ 141, 142.

Available explanation from CBP notes:

> The importer of record is defined as the owner or purchaser of the goods, or when designated by the owner, purchaser, or consignee, a licensed customs broker. The importer of record is the individual or firm liable for payment of all duties and meeting all statutory and regulatory requirements incurred as a result of importation, as described in 19 C.F.R. § 141.1(b).

US Customs and Border Protection, *ACE Entry Summary Instructions Version 2.4a* \*8, at https://perma.cc/YW4U-WUMK.

Given this structure and usage, two obvious evidentiary points favor the argument by Texas Truck that it isn't the *importer* under these facts. First, the CBP Forms 7501 pertinent here each list the "Importer of Record" as one of the Chinese Manufacturers. See Dkt 39-2 at 1–7. Second, the pertinent annual "IMPORT SPREADSHEET" maintained by the Department of Treasury and submitted jointly by the parties lists the "Importer" each time as one of the Chinese Manufacturers, with each supporting form doing the same. See Dkts 39 at ¶ 5 & 39-1 at 1, 27, 57, 68, 78, 100. And backing each spreadsheet are forms stated to be "Based on Customs Form 7501" and titled "IMPORTED COMMODITIES SUBJECT TO EXCISE TAX"—with each also listing one of the Chinese Manufacturers as the "Importer." See generally Dkt 39-1. To be clear, it appears that Texas Truck is nowhere listed as the *importer* on any of the submitted forms.

To avoid this as even pertinent, the Government argues that the interpretation or application of a statute or regulation made by one agency doesn't bind or control another's interpretation of the same material. Dkt 44 at 21, citing *Bombardier Aerospace Corporation v United States*, 831 F3d 268, 275–76 (5th Cir 2016); *NetJets Large Aircraft Inc v United States*, 80 F Supp 3d 743, 755 (SD Ohio 2015). This is of course true as a general matter. But it doesn't mean that such interpretation or application isn't informative. This is particularly so where, as here, the Government offers no rationale for why the two agencies might be in interpretive departure.

8

Consider the citation by the Government of *Bombardier Aerospace Corporation v United States*. The Fifth Circuit there resolved tension between IRS and FAA interpretations of a federal excise tax by highlighting different bases of tax policy and aircraft safety. See 831 F3d at 275–77. It observed that "there is no authority supporting the contention that the way safety regulations categorize [the taxpayer's flight] operations 'are "controlling" or "applicable" in a tax dispute.'" Id at 275, quoting *NetJets Large Aircraft*, 80 F Supp 3d at 755. Yet the Government here neither cites nor explains any similar distance between IRS and CBP purview in this regard. Indeed, rather than be in much (if any) departure as a general matter, the Government expressly concedes that it "does obtain information from CBP regarding goods imported into the United States." Dkt 47 at 5–6. Much is left wanting, then, where the Government specifies no reason why the IRS would reject the designation of "Importer of Record" on CBP Forms 7501 even as it otherwise entirely relied upon those forms to impose the subject excise taxes.

Regardless, and of more importance on this point, the designations made and maintained on CBP Forms 7501 and on the tabulating spreadsheets maintained by the Department of Treasury appear to accord with the ordinary meaning of *importer* under 26 USC § 4071, as considered next.

### c.  Ordinary meaning

Proposed in 1976, the regulatory definition was adopted in 1978, thus at that point first linking the one who *brings* an item into the country from abroad with reference to the definition of *importer*. See 43 Fed Reg 13512 (March 31, 1978) (final adoption of 26 CFR Part 48). But it must be remembered at the outset that *importer* under the regulatory definition actually proceeds under two related lines of inquiry—one pertaining to the person who *brings* an item into the United States, and the other pertaining to the person who *withdraws* that item from a customs bonded warehouse.

A respected treatise on textual interpretation provides that a word or phrase must assume its "contextually appropriate ordinary meaning," and so the words surrounding a given word or phrase shape its actual, understood meaning. Antonin Scalia & Brian A. Garner, Reading Law § 6 at 70 (West 2012). This is

9

especially true where several words "are associated in a context suggesting that the words have something in common." Id at § 31 at 195. And when that's the case, the words "should be assigned a permissible meaning that makes them similar." Ibid.

This suggests that both strands of the *importer* inquiry should be in harmony. It is thus notable that the Government concedes that the withdrawal action pairs to an identifiable entity that undertook the actual, physical action—and not that Texas Truck was somehow the one *withdrawing* the tires from the warehouses. This suggests pairing that same sort of physicality to the *bringing* action.

As noted above, neither party sponsors a dictionary definition of either term. But such definitions provide an obvious reference point by which to discern ordinary meaning. *Adams v All Coast, LLC,* 15 F4th 365, 371 (5th Cir 2021).

An authoritative dictionary in use at the time of adoption of the subject regulatory definition states an *importer* to be "one whose business is the importation and sale of goods from a foreign country." *Webster's Third New International Dictionary* at 1135 (1976). In turn, *importation* is defined as "the act or practice of bringing in (as merchandise) from an outside or foreign source." Ibid. Together, then, an *importer* reads to be the one whose business it is to engage in "the act or practice of bringing in" goods from abroad.

The word *bring* has many possible connotations, and so *Webster's* provides many definitions. For example, *Webster's* illustrates it with phrasal usage of "the trial *brought* a crowd to the courtroom," "the threat *brought* the man to his knees," "the drug *brought* immediate relief from pain," and more. Id at 278 (emphasis original). But the most pertinent here appears to be linkage to usage regarding one who "*brought* two ponderous law books to the trial"—for there (as here) a tangible item is being moved from one place to another. Ibid (emphasis original). Such usage is, in fact, connected to the lead definition, being "to convey, lead, carry or cause to come along from one place to another, the direction of movement being toward the place from which the action is regarded." Ibid.

Neither definition alone fully resolves the points at issue here. But under both, the physicality of the action being

described naturally pairs to an identifiable entity undertaking that activity, along with a possessory connotation accorded the one undertaking the transport activity.

This is even more evident in an authoritative legal dictionary of the relevant time. Without meaningful variation of the subject terms in the revised Fourth Edition in 1968, the Fifth Edition of *Black's Law Dictionary* was published in 1979, the year after adoption of the regulatory definition. It defined *bring* as follows:

> To convey to the place where the speaker is or is to be; to bear from a more distant to a nearer place; to make to come, procure, produce, draw to; to convey, carry or conduct, move. To cause to be, act, or move in a special way. The doing of some thing effectual. The bringing of someone to account, or the accomplishment of some definite purpose.

It provided no definition for *importer*, and the definition of *import* was itself referred to that for *importation*. But as to that term, it was defined as, "The act of bringing goods and merchandise into a country from a foreign country."

Cited with this definition was the decision of the United States Supreme Court in *Cunard Steamship Co v Mellon,* 262 US 100 (1923), which addressed the meaning of both *transportation* and *importation* as used in a Prohibition-era statute relating to alcohol. The Supreme Court there stated:

> We think they are to be taken in their ordinary sense, for it better comports with the object to be attained. In that sense transportation comprehends any real carrying about or from one place to another. It is not essential that the carrying be for hire, or by one for another; nor that it be incidental to a transfer of the possession or title. If one carries in his own conveyance for his own purposes it is transportation no less than when a public arrier [sic] at the instance of a consignor carriers [sic] and delivers to a consignee for a stipulated charge. *Importation, in a like sense, consists in*

> *bringing an article into a country from the outside. If there be an actual bringing in it is importation regardless of the mode in which it is effected.*

Id at 121–22 (emphasis added; citation omitted). It then determined that it was the steamships physically carrying alcohol into US territorial waters that were importing the spirits. More particularly, the importer was decidedly *not* the party that instigated the steamship's journey to America. Rather, the importer was the offending ship itself.

*Cunard* concerned the allowability of alcohol for import into the United States, as opposed to any tax to be imposed on such importation. But whether it is fully analogous with the situation at hand isn't the point. Instead, the point is that such citation in *Black's Law Dictionary* directs the meaning of *importation*—and thus *importer*—toward the one undertaking the actual action, and not toward some more remote cause.

Factually, it is the Chinese Manufacturers, and not Texas Truck, that fit these definitions. Again, the record establishes without dispute of material fact that the Chinese Manufacturers "arranged all transportation of the tires from their plant facilities overseas to ports in the US," along with "packing of the tires into containers and the overseas shipping in containers." Dkt 41-1 at ¶ 6. It was also the Chinese Manufacturers who hired "import agents and brokers" in the US "to arrange unloading of the containers from the ships at the US ports, work with US Customs to obtain release of the containers from the Customs' warehouse, and transportation of the tires in the US directly to Texas Truck's and Texas Oil's door." Ibid. Texas Truck "took no part in the packing, overseas transportation, customs work and duty payment, overland transportation within the US, filing of appropriate excise tax returns, or payment of excise taxes." Id at ¶ 5.

This observation regarding the paired physicality of the action with an identifiable entity undertaking that activity also connects to common parlance—a point that the parties also neglect to consider. To say that "Mary brings the eyeglasses into the living room" is to indicate that Mary is herself physically carrying those eyeglasses into that living room—not that she enlisted someone else to do it. And if Mary was already in the

living room and told Sam to go fetch them, anyone with her would say on Sam's return that he is the one bringing the eyeglasses into the room—not Mary. Likewise, Abraham Lincoln reputedly once said to a waiter, "If this is coffee, then please bring me some tea, but if this is tea, please bring me some coffee." The provenance of the quote is somewhat uncertain. See Carl Sandburg, *Abraham Lincoln: The Prairie Years* 482 (Blue Ribbon Books 1926). But assuming he said it, the waiter—and not Lincoln himself—was the one who then brought that replacement cup.

As used under the regulation, the ordinary meaning of *brings* describes the movement of an article from one place to another by way of a physical or possessory connection to an identifiable entity. Such description doesn't suit the activity of Texas Trucks here, and so it isn't properly deemed the *importer* for purposes of Section 4071.

### d. The Government's preferred definition

In truth, the Government doesn't really attempt its own textual argument to argue against any of the above. It instead cites the following authorities (among others) as supporting contention that the excise tax pertains here to Texas Truck:

- o   Rev Rul 67-209, 1967-1 CB 297;
- o   Rev Rul 68-197, 1968-1 CB 455;
- o   *Handley Motor Co Inc v United States*, 338 F2d 361 (Ct Cl 1964);
- o   *Import Wholesalers Corp v United States*, 368 F2d 577 (Ct Cl 1966); and
- o   *Terry Haggerty Tire Co Inc v United States*, 899 F2d 1199 (Fed Cir 1990).

See Dkt 44 at 11–17.

The rule that the Government would discern from this authority, which it would then use to define *importer* here and in like future cases, is this:

> [T]he importer is the first purchaser resident in the U.S. who arranges (as principal and not as agent) for the goods to be brought into the U.S., or is the inducing and efficient cause of the articles being brought into the U.S.

Dkt 44 at 11; see also id at 16.

Say what you will about whether that states a reasonable policy toward imposition of excise taxes. Perhaps it does. But what you can't say is that it derives at all naturally from either the statute or the regulatory definition.

Were the question whether the Government's requested rule properly synthesizes the cited authority, it certainly does. But these authorities don't warrant close consideration for the very reason that *none* of them purports to undertake a textual analysis of the at-issue regulatory definition of *importer*. The first four obviously couldn't do so, given that that they all precede Section 48.0-2(a)(4)(i) by over a decade. As for *Terry Haggerty*, perhaps a textual argument wasn't presented on appeal, for none is addressed. The court instead looked only at the same cited authority, and rather than consider who was actually the one *bringing* the tires into the country, it expressly determined who was the one *causing* that to happen. 899 F2d at 1200–01; but see id at 1201–02 (Newman, J, dissenting) (implicitly concluding to contrary under ordinary meaning).

Indeed, the Government in no way argues that its preferred definition proceeds from the text, but rather, proceeds from what it observes as the "U.S.-nexus requirement," by which it argues that "all manufacturers excise taxes" must have "a nexus to the United States." Dkt 47 at 2; see also Dkt 44 at 510–11. From this nexal requirement, the Government says, springs what it calls the "first-sale rule," by which it contends, "The courts have long held that manufacturers excise taxes are imposed on the first sale of a taxable article in the United States by the manufacturer, producer, or importer thereof." Dkt 47 at 2, citing *Indian Motorcycle Co v United States*, 283 US 570, 574 (1931); *United States Truck Sales Co v United States*, 229 F2d 693, 697 (6th Cir 1956); *Handley Motor*, 338 F2d at 364; *Import Wholesalers*, 368 F2d at 578; see also Dkt 44 at 10–11. There's reason to doubt that this is as hard-and-fast a rule as suggested by the Government, for *Indian Motorcycle* from the Supreme Court is cited only for the proposition that "the imposition of tax on the manufacturer, producer or importer 'is *intended to be* no more than a comprehensive *and convenient* mode of reaching all first or initial sales." Dkt 47 at 2, quoting 283 US at 574 (emphasis added). But even assuming so, it simply doesn't in

any way match the tax as imposed here by 26 USC § 4071 and supplemented by 26 CFR § 48.0-2(a)(4)(i).

Instead, the text controls. And when, as here, the language of a regulation is unambiguous, no analysis beyond the text is needed. See *Christensen v Harris County*, 529 US 576, 588 (2000); see also *Belt v EmCare Inc*, 444 F3d 403, 408 (5th Cir 2006). This means that the actual text of a taxing statute and/or regulation must first be fairly construed—and only then considered whether imposition of the tax is warranted under the facts. That didn't happen. But curiously, even under the Government's construction and its referenced "first-sale rule," it still doesn't appear to meet these facts. The uncontested affidavit from Texas Truck establishes that it made payment for delivery to its door of the subject tires, without arranging or undertaking in any way the necessary transport activity. Dkt 41-1 at ¶¶ 4–6; see also Dkt 39-3 at 1–127. And title likewise plainly remained with the Chinese Manufacturers until such delivery.

Consider it a different way. If the regulatory definition was intended to reach the mere *purchaser* of foreign goods such as tires, it could easily have said so. But it didn't. Yet a purchaser is all that Texas Truck is on these facts. Notice-and-comment is certainly available to expand the present definition of *importer* to encompass the much broader reading sought by the Government. *Acadian Gas Pipeline System v FERC*, 878 F2d 865, 870 (5th Cir 1989): "The flexibility which will be afforded an agency's interpretation does not permit this Court to sanction each new gloss placed by an agency."

Until then, and on these facts, Texas Truck isn't properly considered an *importer* of the subject foreign-manufactured tires under the plain meaning of the current statute and supporting regulations.

### 4.   Conclusion

The motion by Plaintiff Texas Truck Parts & Tire Inc for summary judgment is GRANTED. Dkt 41.

The cross-motion by Defendant United States of America is DENIED. Dkt 42.

Texas Truck is ORDERED to file a proposed final judgment by October 12, 2023.

SO ORDERED.

Signed on September 28, 2023, at Houston, Texas.

Hon. Charles Eskridge
United States District Judge